## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| SUSAN ZIMMERMAN, MOYA NEVILLE, DINO D'ADDARIO, JAY DESAI, TAMMY WOJCIK, JANA HEATON, and WESLEY BERKEY, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) | |
| | ) ) | CIVIL ACTION FILE NO. 1:20-CV-04409-WMR |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| MATSON MONEY, INC., CHRISTOPHER W. BURNS, INVESTUS ADVISERS LLC d/b/a DYNAMIC MONEY LLC, INVESTUS FINANCIAL LLC, and PEER CONNECT LLC, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## JOINT PRELIMINARY REPORT AND DISCOVERY PLAN

Plaintiffs Susan Zimmerman, Moya Neville, Dino D'Addario, Jay Desai, Tammy Wojcik, Jana Heaton, and Wesley Berkey, individually and on behalf of all others similarly situated, (collectively, "Plaintiffs") and Defendant Matson Money, Inc. ("Matson Money") (collectively with Plaintiffs, the "Parties") submit the following joint preliminary report and discovery plan, pursuant to Local Rule 16.2:

1.    **Description of Case:**

    (a)    **Describe briefly the nature of this action:**

Plaintiffs' version:

This action arises out of an investment advisory relationship between Matson Money, a Registered Investment Advisor ("RIA"), Christopher Burns ("Burns"), Matson Money's "Co-Advisor", and each respective Plaintiff and Class Member. Burns had an agreement with Matson Money requiring him to refer all his clients to Matson Money.   Each of Burns' clients in turn entered into an "Investment Management Agreement" between Matson Money, Investus Advisers, LLC (owned and operated by Burns) ("Investus Advisers"), and Burns.

The Investment Management Agreement gave Matson Money full discretionary investment decision-making authority over Plaintiffs' and Class Members' investment accounts.   Burns' role, *inter alia*, was assist Plaintiffs and Class members in the initial selection of the Matson Money model portfolio appropriate for them.   To do so, Matson Money required Burns and Investus Advisers to assist each Plaintiff and Class Member to complete a questionnaire and investment policy statement, and thereafter have an ongoing relationship with each Plaintiff and Class Member, including meeting with the Plaintiffs and Class Members to discuss any changes to their personal or financial situation that would affect the investments selected.

Between January 2017 and September 2020, Plaintiffs allege that they and the Class Members were induced by Burns to invest in promissory notes that were recommended and sold by financial advisor Chris Burns as part of an alleged Ponzi scheme. Plaintiffs allege the promissory notes were sham investments, unregistered securities and part of a Ponzi scheme that defrauded Plaintiffs and the Class members out of millions of dollars.

Plaintiffs allege that Matson Money breached its fiduciary duties to Plaintiffs and Class Members, failed adequately to supervise the activities of Burns, and materially aided the Investus Defendants in connection with the fraudulent scheme by failing to investigate whether the promissory notes were potentially fraudulent, and by otherwise failing to prevent the withdrawal and deposit of funds from their customer accounts related to these promissory notes, by allegedly failing to inquire as to the source of funds deposited with Matson Money, and the use to which funds withdrawn from Matson Money would be put.

The Amended Complaint alleges causes of action for breach of fiduciary duty (Count I), breach of contract (Count II), violations of the Georgia Uniform Securities Act (Count III), negligence (Count IV), negligence per se (Count V), attorneys' fees (Count VI), and punitive damages (Count VII).

Defendant Matson Money's version:

This action arises from Plaintiffs' investments in so-called "peer to peer"

promissory notes that were recommended and sold by financial advisor Chris Burns as part of an alleged Ponzi scheme. Plaintiffs allege that Matson Money breached certain legal obligations by failing to investigate whether Mr. Burns' recommended promissory notes were potentially fraudulent, and by otherwise failing to prevent the withdrawal and deposit of funds from their customer accounts related to these promissory notes, by allegedly failing to inquire as to the source of funds deposited with Matson Money, and the use to which funds withdrawn from Matson Money would be put.

Based on these allegations, Plaintiffs assert the following claims against Matson Money: 1. Breach of Fiduciary Duty; 2. Violations of the Georgia Securities Act of 2008; 3. Breach of Contract; 4. Negligence; 5. Negligence Per Se; 6. Attorneys' Fees and Expenses; and 7. Punitive Damages.

**(b)     Summarize, in the space provided below, the facts of this case.  The summary should not be argumentative nor recite evidence**.

Plaintiffs' response:

Plaintiffs and Class Members entered into a tri-partite Investment Management Agreement with Matson Money, Christopher Burns ("Burns"), and Investus Advisers, LLC ("Investus Advisers").  Under the terms of the Investment Management Agreement, Matson Money agreed to act as the Plaintiffs' and Class Members' investment adviser with full discretionary authority over the Plaintiffs'

and Class Members' Matson Money accounts and contracted with Burns and
Investus Advisers to act as Matson Money's "Co-Adviser" and "Co-Adviser
Representative" to services to Plaintiffs and Class Members on behalf of Matson
Money.

The Investment Management Agreement tasked Burns and Investus
Advisers with, among other things, (1) all face-to-face contact with Plaintiffs and
Class Members (absent special arrangement), (2) administering Matson Money's
propriety profiling tools upon which Matson Money relied in assessing Plaintiffs'
and Class Members' financial condition and appropriateness of investments, (3)
assisting Plaintiffs and Class Members with transferring funds into their Matson
Money accounts, (4) advising Plaintiffs and Class Members regarding what Matson
Money funds best suited their needs, (5) assessing Plaintiffs' and Class Members'
investment needs, and (6) reporting and updating changes to their financial condition
and investment goals over time.  Burns and Investus Advisers were approved by
Matson Money and were paid an advisory fee determined by Matson Money directly
out of the accounts under Matson Money's control.  Matson Money itself collected
a predetermined percentage of the funds under its management.

In the process of advising Plaintiffs and Class Members on behalf of Matson
Money, Burns solicited Plaintiffs to invest in "peer-to-peer" funding opportunities
which he presented as "loans" to a person or entity that would provide a

predetermined percentage return on investment.  Burns represented that each loan was secured by an otherwise less liquid asset, such as stock in a major company, which could simply be sold in the event of non-payment of the loan.  In reality, however, the money was not used, and Burns had no intention of using it, as a "loan" for a business entity.  Nor were the loans secured by other less liquid assets.  Instead, Burns used the Plaintiffs' and Class Members' money for his own personal benefit, funding a lavish lifestyle.  The sham lending opportunity had features of a Ponzi scheme, as Burns used funds from later "loans" to make payments on earlier loans, giving the loans a further veneer of legitimacy.

Plaintiffs maintain that despite Matson Money's ongoing role as each Plaintiffs' and Class Members' discretionary investment adviser, Matson Money failed to exercise supervisory authority over Burns or Investus Advisers, to monitor their activity, or to have programs or processes in place to identify potential malfeasance by its co-advisers and co-advisers representatives. Matson Money failed to detect or identify account activity that was related to the Ponzi scheme, including investments into Matson Money accounts from "payments" made to Matson Money client's from entities owned by Burns and withdrawals from Matson Money accounts used to fund the sham "loans."

**Defendant Matson Money's response**:

Plaintiffs separately hired Mr. Burns as their investment advisor and entered

into contracts with Mr. Burns' investment advisory firm Investus Advisors, LLC ("Investus"). Under the terms of these agreements, customers agreed that Investus would to select third-party investment advisers for Plaintiffs, and Plaintiffs agreed to open an account with Matson Money as one such third-party investment adviser.

In accordance with these agreements, Plaintiffs opened Matson Money accounts by entering into Matson Money's Investment Management Agreement (the "Agreement"). The Agreement listed Investus Advisers as a "Co-Advisor" and Mr. Burns as a "Co-Adviser Representative" that would introduce prospective clients to Matson Money's services, investment options and model portfolios. The Agreement further provided Matson Money with discretionary authority over the assets within each of Plaintiffs' respective accounts with Matson Money.

Separate from the Matson Money relationship, Mr. Burns presented Plaintiffs with an unrelated investment opportunity in peer-to-peer promissory notes that purportedly would produce a high rate of return with no investment risk. By way of example, Mr. Burns told one customer that his peer-to-peer promissory notes were needed by prospective borrowers that had inherited a large quantity of stock they could not sell without incurring significant capital-gains tax liability. Mr. Burns represented that the prospective borrowers would pledge their inherited stock as collateral for their respective promissory notes and, in return, would repay their notes with interest over the next five years.

Based on these representations, Plaintiffs purchased certain promissory notes recommended and sold by Mr. Burns. Unbeknownst to Matson Money, some Plaintiffs transferred the principal-and-interest payments from these notes into their Matson Money accounts, while other Plaintiffs used funds from their Matson Money accounts to purchase Mr. Burns' promissory notes, also without Matson Money's knowledge or participation.

Payments to Plaintiffs on the promissory notes sold by Mr. Burns eventually stopped. On October 23, 2020, the United States Department of Justice brought criminal charges against Mr. Burns for defrauding investors with his "peer to peer" lending program. Plaintiffs maintain that the promissory notes they purchased from Mr. Burns were part of an alleged Ponzi scheme. Plaintiffs further allege that Matson Money owed them fiduciary, contractual, and legal duties to identify Mr. Burns' alleged Ponzi scheme, and to prevent Plaintiffs' respective deposits and withdrawals from their accounts with Matson Money related to this Ponzi scheme.

**(c)    The legal issues to be tried are as follows:**

Plaintiffs' response:

(1)  Whether Defendants breached their fiduciary duties to Plaintiffs and Class Members, which arose under the Investment Advisory Act of 1940, and applicable federal and state law and regulations, and the measure of resulting damages.

(2) Whether Defendants violated the Georgia Uniform Securities Act of 2008 by selling unregistered securities to Plaintiffs and Class Members, and the measure of resulting damages.

(3) Whether Matson Money Investment Management Agreement breached its Investment Management Agreement with Plaintiffs and Class Members, and the measure of resulting damages.

(4) Whether Matson Money negligently failed (1) to implement policies and procedures reasonably designed to prevent its co-adviser and co-advisers representatives under the Investment Management Agreement from causing an unreasonable risk of harm to Plaintiffs and Class Members and (2) to supervise Investus Advisers and Burns and monitor Plaintiffs and Class Members accounts, and the measure of resulting damages.

(5) Whether Matson Money violated 17 C.F.R. § 275.306(4)-7, and if that violation amounts to negligence per se, and the measure of resulting damages.

(6) Whether Plaintiffs may recover attorney's fees and expenses.

(7) Whether Plaintiffs may recover punitive damages.

Defendant Matson Money's response:

(1) Whether plaintiffs' complaint states a claim upon which relief can be granted.

(2)   Whether Matson Money had a fiduciary duty to prevent plaintiffs from using withdrawals from their accounts to purchase Burns' "peer to peer" notes or to prevent plaintiffs from depositing the proceeds of those note into their accounts.

(3)   Whether Mr. Burns and Investus violated the Georgia Securities Act of 2008 and, if so, whether Matson Money materially aided any such violation.

(4)   Whether Matson Money breached any term of the Agreement.

(5)   Whether Matson Money had a common law duty to adopt policies and procedures to prevent deposits and withdrawals from its customer accounts that involved an unreasonable risk of financial harm and, if so, whether Matson Money breached this duty.

(6)   Whether Matson Money had a duty pursuant to C.F.R. § 275.206(4)-7 to prevent plaintiffs from using withdrawals from their accounts to purchase Burns' "peer to peer" notes or to prevent plaintiffs from depositing the proceeds of those note into their accounts.

(7)   Whether Plaintiffs can recover attorneys' fees and litigation expenses from Matson Money.

(8)   Whether Plaintiffs can recover punitive damages from Matson Money.

**(d)   The cases listed below (include both style and action number) are:**

**(1) Pending Related Cases:** *United States v. Burns*, No. 1:20-MJ-0906 (N.D. Ga.).

**(2)  Previously Adjudicated Related Cases:** None.

**2.     This case is complex because it possesses one or more of the features listed below (please check):**

**__X__(1)  Unusually large number of parties**

**_____(2)  Unusually large number of claims or defenses**

**_____(3)  Factual issues are exceptionally complex**

**_____(4)  Greater than normal volume of evidence**

**__X__(5)  Extended discovery period is needed**

**__X__(6)  Problems locating or preserving evidence**

**__X__(7)  Pending parallel investigations or action by government**

**__X__(8)  Multiple use of experts**

**_____(9)  Need for discovery outside United States boundaries**

**_____(10)  Existence of highly technical issues and proof**

**_____(11)  Unusually complex discovery of electronically stored information**

**3.     Counsel**

**The following individually-named attorneys are hereby designated as lead counsel for the parties:**

For Plaintiffs:      Jason R. Doss
                     THE DOSS FIRM, LLC
                     The Brumby Building
                     127 Church Street, Suite 220
                     Marietta, Georgia 30060

(770) 578-1314
*jasondoss@dossfirm.com*

Robert C. Port
Luke M. Caselman
GASLOWITZ FRANKEL, LLC
303 Peachtree Street N.E.
Suite 4500
Atlanta, Georgia 30308
(404) 892-9797
*rport@gadisputes.com*
*lcaselman@gadisputes.com*


For Matson Money:        Robert R. Ambler, Jr.
Brendan H. White
WOMBLE BOND DICKINSON (US) LLP
271 17ᵗʰ Street, NW
Suite 2400
Atlanta, Georgia 30363-1017
(404) 872-7000
*bob.ambler@wbd-us.com*
*brendan.white@wbd-us.com*

Russell S. Sayre (Admitted *Pro Hac Vice*)
Spencer S. Cowan (Admitted *Pro Hac Vice*)
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street
Suite 1800
Cincinnati, Ohio 45202-3957
(513) 381-2838
*sayre@taftlaw.com*
*scowan@taftlaw.com*


4.    **Jurisdiction:**

   **Is there any question regarding this Court's jurisdiction?**

   (  ) **Yes**          ( x ) **No**

**If "yes," please attach a statement, not to exceed one page, explaining the jurisdictional objection. When there are multiple claims, identify and discuss separately the claim(s) on which the objection is based. Each objection should be supported by authority.**

**5.    Parties to This Action:**

**(a)  The following persons are necessary parties who have not been joined**:  None.

**(b)  The following persons are improperly joined as parties:**  None.

**(c)  The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:** Not applicable.

**(d)  The parties shall have a continuing duty to inform the Court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.**

**6.    Amendments to the Pleadings:**

**Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed. R. Civ. P. 15. Further instructions regarding amendments are contained in Local Rule 15.**

**(a)  List separately any amendments to the pleadings that the parties anticipate will be necessary:**

Plaintiffs anticipate that it might be necessary to move to amend the Complaint under Fed. R. Civ. P. 15.

**(b)  Amendments to the pleadings submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.**

Plaintiffs reserve the right, prior to the motion for class certification identified in Paragraph 7(e) below, to move to amend the Complaint under Fed. R. Civ. P. 15 to add additional claims under the Georgia Securities Act, other substantive claims, and/or to modify the class or potential subclass definition.

**7.     Filing Times for Motions**

**All motions should be filed as soon as possible. The local rules set specific filing limits for some motions. These times are restated below.**

**All other motions must be filed WITHIN THIRTY DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later.  Local Rule 7.1A(2).**

**(a)  *Motions to Compel*: before the close of discovery or within the extension period allowed in some instances. Local Rule 37.1.**

**(b)  *Summary Judgment Motions*: within thirty days after the close of discovery, unless otherwise permitted by court order. Local Rule 56.1.**

(c)  *Other Limited Motions*: **Refer to Local Rules 7.2A; 7.2B, and 7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.**

(d)  *Motions Objecting to Expert Testimony*: <u>Daubert</u> **motions with regard to expert testimony no later than the date that the proposed pretrial order is submitted.  Refer to Local Rule 7.2F.**

(e) *Motion to Amend Complaint*: Plaintiffs reserve the right, prior to the motion for class certification identified in Paragraph 7(f) below, to move to amend the Complaint under Fed. R. Civ. P. 15 to add additional claims under the Georgia Securities Act, other substantive claims, and/or to modify the class or potential subclass definition.

(f) *Motion for Class Certification*: The Plaintiffs shall move within six (6) months after the Matson Money's answer is filed for a determination under Fed. R. Civ. P. 23(c)(1) as to whether this action may be maintained as a class action.

8.    **Initial Disclosures:**

**The parties are required to serve initial disclosures in accordance with Fed. R. Civ. P. 26.  If any party objects that initial disclosures are not appropriate, state the party and basis for the party's objection. NOTE: Your initial disclosures should include electronically stored information. Refer to Fed. R. Civ. P. 26(a)(1)(B).**

The Parties have agreed that that the exchange of initial disclosures shall occur thirty (30) days after Matson Money's answer is filed.

**9.    Request for Scheduling Conference:**

**Does any party request a scheduling conference with the Court?  If so, please state the issues which could be addressed and the position of each party.**

The Parties do not request a conference at this time.

**10.   Discovery Period:**

**The discovery period commences thirty days after the appearance of the first defendant by answer to the complaint.  As stated in LR 26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period.**

**Cases in this Court are assigned to one of the following three discovery tracks: (a) zero month discovery period, (b) four months discovery period, and (c) eight months discovery period.  A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F.  The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing.**

**Please state below the subjects on which discovery may be needed:**

If any part of Matson Money's motion to dismiss is denied, discovery will be needed on the allegations contained in this action's operative pleading and the

defenses thereto.  Discovery will also be needed into the adequacy of plaintiffs to represent absent class members and as to whether the other requirements of Rule 23(b) of the Federal Rules of Civil Procedure are satisfied.

**If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:**

The Parties anticipate that this action will require a twelve (12) month discovery period. This action involves an alleged fraud perpetrated by a fugitive individual (Mr. Burns) who has not appeared in this case, and involves a number of disparate transactions. Plaintiffs also seek to certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure. Significant discovery will be needed to determine whether this action should be certified as a class action.

Lastly, this action and/or its discovery period may need to be stayed pending the resolution of the criminal case pending against Mr. Burns. *United States v. Burns*, No. 1:20-MJ-0906 (N.D. Ga.).

**11.    Discovery   Limitation   and   Discovery   of   Electronically   Stored Information:**

**(a) What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and**

**what other limitations should be imposed.**

None at this time.

**(b) Is any party seeking discovery of electronically stored information?**

 X   **Yes**                _____  **No**

**If "yes,"**

**(1) The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:**

The Parties anticipate discovery of electronically stored data, but do not anticipate issues arising that necessitate the entry of an Order covering the scope and breadth of such discovery. Should such issues arise, the Parties shall first confer in good faith to resolve the issues, and if they are unsuccessful, shall seek this Court's guidance and/or direction.

**(2) The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production (e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:**

The Parties have agreed that the "native format" of electronic data shall be preserved where practical; otherwise documents shall be exchanged in Portable Document Format (.pdf). The method of Production will be disk, flash drive, File Transfer Protocol (FTP) or similar file transfer link.

**In the absence of agreement on issues regarding discovery of electronically stored information, the parties shall request a scheduling conference in paragraph 9 hereof.**

**12.   Other Orders:**

**What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?**

None at this time.

**13.   Settlement Potential:**

**(a)   Lead counsel for the parties certify by their signatures below that they conducted a Rule 26(f) conference that was held on** February 25, 2021**, and that they participated in settlement discussions. Other persons who participated in the settlement discussions are listed according to party**.

**For Plaintiffs:**   */s/ Jason R. Doss*

**Other participants:** */s/ Robert C. Port*

**For defendant:** */s/ Robert R. Ambler, Jr.*

**Other participants:**   */s/ Russell A. Sayre*

**(b)** All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:

(_) A possibility of settlement before discovery.

( X ) A possibility of settlement after discovery.

(_) A possibility of settlement, but a conference with the judge is needed.

(_)   No possibility of settlement.

**(c) Counsel (  X  ) do or ( ___ ) do not intend to hold additional settlement conferences among themselves prior to the close of discovery. The proposed date of the next settlement conference is** underdetermined at this time.

**(d) The following specific problems have created a hindrance to settlement of this case:**

None at this time.

**14.  Trial by Magistrate Judge:**

**Note: Trial before a Magistrate Judge will be by jury trial if a party is otherwise entitled to a jury trial.**

**(a) The parties (_____) do consent to having this case tried before a magistrate judge of this Court. A completed Consent to Jurisdiction by a United States Magistrate Judge form has been submitted to the clerk of court this ___ day of _____, 20___.**

**(b) The parties ( x ) do not consent to having this case tried before a**

**magistrate judge of this Court.**

Respectfully submitted this 8th day of March, 2021.

*/s/ Jason R. Doss*
Jason R. Doss
Georgia Bar No. 227117
The Doss Firm, LLC
The Brumby Building
127 Church Street, Suite 220
Marietta, Georgia 30060
(770) 578-1314
jasondoss@dossfirm.com

*/s/ Robert R. Ambler, Jr.*
Robert R. Ambler, Jr.
Georgia Bar No. 014462
Brendan H. White
Georgia Bar No. 458315
Womble Bond Dickinson (US) LLP
271 17th Street, NW, Suite 2400
Atlanta, Georgia 30363-1017
(404) 872-7000
Bob.Ambler@wbd-us.com
Brendan.White@wbd-us.com

*Robert C. Port*
Robert C. Port
Georgia Bar No. 584665
Luke M. Caselman
Georgia Bar No. 918204
Gaslowitz Frankel LLC
303 Peachtree Street N.E., Suite 4500
Atlanta, Georgia 30308
(404) 892-9797
rport@gadisputes.com
lcaselman@gadisputes.com

Russell S. Sayre
Admitted *Pro Hac Vice*
Spencer S. Cowan
Admitted *Pro Hac Vice*
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
(513) 381-2838
sayre@taftlaw.com
scowan@taftlaw.com

*Attorneys for Plaintiffs*

*Attorneys for Matson Money, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

SUSAN ZIMMERMAN, MOYA                )
NEVILLE, DINO D'ADDARIO, JAY         )
DESAI, TAMMY WOJCIK, JANA            )
HEATON, and WESLEY BERKEY,           )
individually and on behalf of all others  )
similarly situated,                  )        CIVIL ACTION FILE
                                     )        NO. 1:20-CV-04409-WMR
        Plaintiffs,                  )
                                     )
v.                                   )
                                     )
MATSON MONEY, INC.,                  )
CHRISTOPHER W. BURNS,                )
INVESTUS ADVISERS LLC d/b/a          )
DYNAMIC MONEY LLC,                   )
INVESTUS FINANCIAL LLC, and          )
PEER CONNECT LLC,                    )
                                     )
        Defendants.                  )

## <u>SCHEDULING ORDER</u>

Upon review of the information contained in the Joint Preliminary Report and

Discovery Plan form completed and filed by the parties, the Court orders that the

time limits for adding parties, amending the pleadings, filing motions, completing

discovery, and discussing settlement are as set out in the Federal Rules of Civil

Procedure and the Local Rules of this Court, except as herein modified: stated in the

above completed form, except as herein modified:

Upon the Parties' consent, this action is scheduled for a twelve (12) month

discovery period.

      IT IS SO ORDERED, this _____day of _____, 2021.

_____
HONORABLE WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE

## <u>CERTIFICATE OF SERVICE AND TYPE SIZE COMPLIANCE</u>

Pursuant to Local Rule 5.1C and Standing Order No. 19-01, the foregoing

**JOINT PRELIMINARY REPORT AND DISCOVERY PLAN** is prepared in

Times New Roman, 14 point, and was filed using the CM/ECF system, which will

automatically provide notice to all attorneys of record by electronic means.

This 8th day of March, 2021.

/s/ *Robert R. Ambler, Jr.*
Robert R. Ambler, Jr.
Georgia Bar No. 014462
